IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MONTGOMERY, | ) | CASE NO. 1:15-cv-00330 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| NEIL TURNER, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Daniel Montgomery ("Petitioner" or "Montgomery"), through counsel, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition") on February 19, 2015.  Doc. 1.  Montgomery challenges the constitutionality of his conviction and sentence in *State of Ohio v. Daniel Montgomery*, CR-433325 (Cuyahoga County) and asserts two grounds for relief.  Doc. 1.

On October 9, 2003, Montgomery pleaded guilty to the charge of murder with a three-year firearm specification, as amended in Count 1 of the indictment, and guilty to the charge of aggravated arson with a three-year firearm specification, as amended in Count 3.[1]  Doc. 5-1, pp. 28, 37-53.  The trial court sentenced Montgomery to a total prison term of 24 years to life.  Doc. 5-1, p. 28.

---

[1] Montgomery was indicted on four Counts.  Doc. 5-1, pp. 17-20, 28.  At the change of plea hearing, on the prosecutor's recommendation, Count 1 was amended to read murder O.R.C. 2923.02 with deletion of the felony murder specification and deletion of the one-year firearm specification.  Doc. 5-1, p. 28.  Count 3 was amended by deletion of the one-year firearm specification.  Doc. 5-1, p. 28.  Counts 2 and 4 were nolled. Doc. 5-1, p. 28.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  As explained below, Montgomery's Petition is barred by the statute of limitations in 28 U.S.C. § 2244(d).  Accordingly, the undersigned recommends that the Court **DISMISS with prejudice** Montgomery's Petition (Doc. 1).

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  In 2008, as part of Montgomery's appeal from his conviction and sentence, the Ohio Eighth District Court of Appeals summarized facts underlying Montgomery's conviction as follows:

> {¶ 2}  In early 2003, Montgomery was charged with aggravated murder, with notice of felony murder and firearm specifications, murder with firearm specifications, and two counts of aggravated arson, also with firearm specifications, related to the shooting death of Father William Gulas. In October 2003, Montgomery pled guilty in an amended indictment to one count of murder with a three-year firearm specification and one count of aggravated arson with a three-year firearm specification. Montgomery and the plaintiff-appellee, State of Ohio ("State"), agreed to a sentence of twenty-four years to life in prison. On the same day, the court accepted the recommended sentence and sentenced Montgomery to three years on the firearm specifications, to run prior to and consecutive to fifteen years to life on murder, which was to run consecutive to six years for aggravated arson, for a total sentence of twenty-four years to life in prison.

*State v. Montgomery*, 2008-Ohio-443, 2008 WL 322830, * 1 (Oh. App. Ct. Feb. 7, 2008); Doc. 5-1, pp. 1-3.

In 2013, when considering Montgomery's appeal from the trial court's denial of his motion to withdraw his guilty plea, the Eighth District Court of Appeal further summarized the facts underlying Montgomery's conviction as follows:

{¶ 1} In 2003, defendant-appellant Daniel Montgomery,[1] who was assigned to work at St. Stanislaus Church in Cleveland, confessed to murdering the church's pastor, Reverend William Gulas, and setting fire to the parish rectory in order to cover up the murder. To avoid a possible death penalty, he pleaded guilty to murder and arson. He now seeks to withdraw that plea, claiming that he entered the plea under duress and unaware that his attorney knew of the existence of exculpatory evidence. When one of his trial attorneys filed an affidavit contradicting the claim that counsel failed to inform Montgomery about potential exculpatory evidence, Montgomery asked the court to strike the affidavit on grounds that it divulged privileged attorney-client communications. The court denied the motion to strike and then denied the motion to withdraw the guilty plea on grounds that most of the claims raised were res judicata because they could have been raised in earlier proceedings.

> FN 1 – Montgomery was known as "Brother Dan." The record indicates that he is referred to as a Brother in the Franciscan order of priests, a Friar, and a formation student in the order.

{¶ 2} We find that the court correctly refused to strike the affidavit, but for different reasons than those given by the court—by raising an ineffective assistance of counsel claim in postconviction proceedings, Montgomery waived the attorney-client privilege. We also agree with the court that issues raised in the motion to withdraw the guilty plea, even those that claimed actual innocence, could have been raised in earlier proceedings and were res judicata. We thus affirm the court's refusal to permit Montgomery to withdraw his guilty plea.

I

{¶ 3} Montgomery was assigned to St. Stanislaus as a tutor in the church school. In December 2002, he received a 12:30 p.m. telephone call from a parishioner and went to the pastor's office to get a telephone number. As he entered the office, he saw smoke and flames. He went back to his room and told the caller that he did not know the number. He then called 911 to report a fire. Montgomery remained on the scene to console parishioners and pray for the safety of the pastor, who could not be located. As firefighters put out the fire, they discovered the pastor's body in the rectory office.

{¶ 4} The day after the fire, the police questioned Montgomery as part of an arson investigation. That questioning did not go well. The police found it odd that Montgomery was unable to say what he had been doing in the 15 minutes before he discovered the fire. He recalled with clarity events outside that frame of time on the day of the fire, but claimed to have no memory of his activities immediately before he entered the church office. As the questioning continued, the police were informed that the coroner had determined that the pastor did not die as a result of the fire, but had instead died from a gunshot wound to the neck.

{¶ 5} Now that they were investigating a murder, the police accused Montgomery of being less than truthful with his responses regarding his whereabouts before he reported the fire. Montgomery put his head down and said that he needed help. The police asked him if he owned a gun, and Montgomery began searching his wallet to show the police a receipt for a gun. There was no receipt. The police again told Montgomery that he was not being truthful about his activities in the 15 minutes before he claimed to have discovered the fire. Montgomery again put his head down and said that he needed help.

{¶ 6} Montgomery told the police that his career as a Franciscan was unraveling. He had been accused by some students of inappropriately touching them, been banned from the church school, and was being transferred to an Indiana friary where he would work in a home for retired Franciscan clergy. "Sad and angry" over these orders, he wanted to "hurt someone." On the day before the fire, he said he went to a local convenience store that supposedly maintained a drug trade and purchased a loaded handgun from the clerk at the counter.

{¶ 7} The following day, at 12:15 p.m., Montgomery took his gun to the pastor's office. The pastor was sitting at his desk. Montgomery told the pastor, "I can't fucking take this anymore" and fired a single shot. He claimed to see blood streaming down the pastor's chest. Montgomery dropped the gun, found a lighter, and set fire to some papers in the office. He then returned to his room and fell asleep, only to be awakened by the parishioner's telephone call. The caller requested a telephone number that the pastor would know, so Montgomery went to the pastor's office and discovered the fire. He then called 911 to report the fire.

{¶ 8} The state charged Montgomery with felony murder and aggravated arson. In October 2003, he pleaded guilty to murder and arson with an agreed sentence of life with parole eligibility after a minimum of 24 years.

{¶ 9} In December 2003, Montgomery filed a delayed appeal. Appellate counsel certified that there was no merit to the appeal and, under the authority of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), filed a motion to voluntarily dismiss the appeal. We granted the motion and dismissed the appeal.

{¶ 10} In October 2004, Montgomery filed a pro se motion for DNA testing of the bullet recovered from the pastor's body. He claimed that his DNA would not be on the bullet, so "it would be impossible for me to have used a firearm to shoot the victim." He further argued that if he did not shoot the victim, "I would not have set the fire, making me innocent of aggravated arson." The state opposed DNA testing under former R.C. 2953.82(D), which at that time stated that the prosecuting attorney's disagreement with an inmate's request for DNA testing was "final and is not appealable by any person to any court [.]" The court did not rule on this motion.

{¶ 11} In November 2006, Montgomery filed a petition for postconviction relief and a motion for resentencing. Both motions sought resentencing on grounds that the court imposed more than the minimum sentence and imposed consecutive sentences in violation of the United States Supreme Court decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held that any sentence beyond the statutory minimum that required judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant was unconstitutional. The state opposed the petition on grounds that Montgomery pleaded guilty to an agreed sentence and that *Blakely* could not be applied retroactively.

{¶ 12} At the same time he filed his petition for postconviction relief, Montgomery filed an application to reopen his direct appeal, asserting that appellate counsel was ineffective for failing to raise sentencing issues relating to his receiving more than the minimum prison term and consecutive sentences. We treated the application as a motion to reconsider the dismissal of the prior appeal and granted the motion. We then held, consistent with other appellate districts, that Montgomery's agreed sentences foreclosed appellate review concerning the length of his sentence. *See State v. Montgomery,* 8th Dist. Cuyahoga No. 83914, 2008-Ohio-443, 2008 WL 322830, ¶ 6. We also rejected a claim that trial counsel was ineffective for allowing Montgomery to accept a plea bargain to more than the minimum term and to consecutive sentences. *Id.* at ¶ 17.

{¶ 13} In July 2011, Montgomery filed a motion to withdraw his guilty plea. Recanting his confession, he argued his actual innocence. He also argued that the state withheld exculpatory evidence, the existence of which would have proven his innocence. Finally, Montgomery argued that trial counsel failed to investigate the evidence and ignored his desire to retract his plea and go to trial.

{¶ 14} The motion to withdraw the guilty plea cited seven different "problems" with the state's case: (1) the murder weapon was not found and Montgomery's story about how he purchased the gun was refuted by the store owner who denied employing anyone matching the description of the clerk who allegedly sold Montgomery the gun; (2) there was evidence that a church lock box used to store bingo receipts had been opened and burned currency was found at the scene of the fire, thus suggesting that the pastor had been robbed, even though the police had no evidence that Montgomery committed this robbery; (3) the state failed to divulge evidence that the pastor's cell phone was later found in the possession of someone from outside the church, suggesting that the pastor's cell phone had been taken by the robber; (4) the coroner found evidence of blunt trauma to the pastor's head, suggesting that he had struggled with the murderer; (5) the police disregarded evidence that a church employee may have been present at the church at the time of the murder and that this person had financial difficulties that provided a motive for committing a robbery; (6) there was no gunshot residue on Montgomery's clothing consistent with his having fired a gun; and (7) Montgomery's interrogation was "a model of unreliability."

{¶ 15} The state opposed the motion to withdraw the guilty plea on grounds that Montgomery had grossly distorted the facts; that his claims could have been raised on direct appeal; and that he failed to establish the existence of a manifest injustice sufficient to permit the court to allow him to withdraw the plea. To support its argument that Montgomery failed to show a manifest injustice in the state's failure to disclose exculpatory evidence, the state appended an affidavit from one of Montgomery's trial attorneys. That attorney stated that he received full discovery on all of the "problems" raised in the motion to withdraw the guilty plea and that he shared that discovery with Montgomery.

{¶ 16} Montgomery filed a motion to strike his trial attorney's affidavit on grounds that it violated R.C. 2317.02(A), that prohibits an attorney from testifying concerning a communication made to the attorney by a client or the attorney's advice to a client. The state opposed the motion by arguing that the affidavit did not contain any communications by Montgomery to trial counsel and that Montgomery had, in any event, waived the attorney-client privilege by raising a postconviction ineffective assistance of counsel claim. The court denied the motion to strike the affidavit because it found that the affidavit did not reveal any communications between Montgomery and trial counsel.

{¶ 17} The court denied the motion to withdraw the guilty plea finding it was barred by res judicata. The court held that "[e]ach claim raised in Montgomery's conclusions as stated in his Corrected Motion to Withdraw Guilty Plea were facts in existence and known to Montgomery at the time of his plea, sentencing, and subsequent direct appeal and petition for postconviction relief." The court also found no basis for concluding that the state withheld exculpatory evidence of cell phone records, noting that "Montgomery does not dispute that the records were, in fact, provided to defense counsel." Finally, it found that claims of ineffective assistance of counsel relating to the guilty plea and Montgomery's fabricated confession could have been raised on direct appeal, so they were res judicata.

*State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579, 582–585 (Oh. App. Ct. Sept. 26, 2013);

Doc. 5-1, pp. 4-16.

## II.     Procedural Background

### A.     State Conviction and Sentencing

On February 11, 2003, a Cuyahoga County Grand Jury indicted Montgomery on four

counts: Counts 1 and 2 – aggravated murder in violation of O.R.C. § 2903.01 with a felony

murder specification, a one-year firearm specification and a three-year firearm specification;[2]
and Counts 3 and 4 – aggravated arson in violation of O.R.C. § 2909.02 with a one-year firearm
specification and a three-year firearm specification.[3]  Doc. 5-1, pp. 17-20.

On October 9, 2003,[4] Montgomery withdrew his prior plea of not guilty and pleaded
guilty to the charge of murder with a three-year firearm specification, as amended in Count 1,
and guilty to the charge of aggravated arson with a three-year firearm specification, as amended
in Count 3.[5]  Doc. 5-1, pp. 28, 37-53.   Counts 2 and 4 were nolled.  Doc. 5-1, p. 28.  In
accordance with the parties' agreed sentence (Doc. 5-1, pp. 44, 50), the trial court sentenced
Montgomery to 3 years on the merged firearm specifications in Counts 1 and 3[6] to be served
prior to and consecutive with 15 years to life on the base charge of Count 1 and 6 years on the
base charge of Count 3 (Doc. 5-1, pp. 28, 50-51).  The trial court ordered Counts 1 and 3 to run
consecutive to each other for a total prison term of 24 years to life.  Doc. 5-1, pp. 28, 51.

## B.    Application for DNA testing

On October 21, 2004, Montgomery filed a *pro se* application for DNA testing with the
trial court. Doc. 5-1, p. 25; *Montgomery*, 997 N.E.2d at 584, ¶ 10 (Oh. App. Ct. 2013).
Montgomery sought to have DNA testing conducted of the bullet removed from the victim's

---

[2] Count 1 charged that Montgomery "purposely and with prior calculation and design, caused the death of another,
to-wit: Father William Gulas" (Doc. 5-1, p. 17) and Count 2 charged that Montgomery "purposely caused the death
of another, to-wit: Father William Gulas, while committing or attempting to commit, or while fleeing immediately
after committing or attempting to commit Aggravated Arson" (Doc. 5-1, p. 18).

[3] Count 3 charged that Montgomery "by means of fire or explosion, knowingly created a substantial risk of serious
physical harm to Father William Gulas" (Doc. 5-1, p. 19) and Count 4 charged that Montgomery "by means of fire
or explosion, knowingly caused physical harm to an occupied structure, as defined in Section 2909.01, to-wit: St.
Stanislaus Rectory" (Doc. 5-1, p. 20).

[4] The journal entry was journalized on October 10, 2003.  Doc. 5-1, p. 28.

[5] Count 1 and Count 3 were amended on recommendation of the prosecutor.  Doc. 5-1, p. 28.

[6] All specifications were merged for sentencing.  Doc. 5-1, pp. 28, 51.

body.  *Montgomery*, 997 N.E.2d at 584, ¶ 10.  On December 3, 2004, the State responded by

filing the prosecuting attorney's statement of disagreement to application for DNA testing.  Doc.

5-1, p. 25; *Montgomery*, 997 N.E.2d at 584, ¶ 10.  The trial court did not rule on the application

because Montgomery's application was filed under former O.R.C. § 2953.82(D),[7] "which at the

time stated that the prosecuting attorney's disagreement with an inmate's request for DNA

testing was 'final and is not appealable by any person to any court.'"  *Id.*; *see also* Doc. 5-1, p. 5.

## C.    Direct Appeal

On December 10, 2003, Montgomery, acting *pro se*, sought leave to file a delayed

appeal.  Doc. 5-1, p. 56.  On January 8, 2004, the court of appeals granted Montgomery's motion

for leave to file a delayed appeal and appointed counsel for the delayed appeal.  Doc. 5-1, p. 55.

Following approvals of requests for extensions of time to file assignments of error, on May 18,

2004, Montgomery's counsel filed a motion for voluntary dismissal of the appeal pursuant to

*Anders v. California*, 386 U.S. 738 (1967) and App. R. 28.  Doc. 5-1, pp. 1, 55.  The court of

appeals granted the motion for voluntary dismissal and dismissed the appeal on May 19, 2004.

Doc. 5-1, pp. 1, 55.

On August 17, 2004, Montgomery filed a *pro se* motion for appointment of counsel to

reopen his appeal under App. R. 26(B).  Doc. 5-1, p. 55.  On September 23, 2004, the court of

appeals denied Montgomery's motion for appointment of counsel to reopen his appeal.  Doc. 5-

1, p. 55.

On November 6, 2006, Montgomery filed an application to reopen his appeal pursuant to

App. R. 14(B) and App. R. 26(B).  Doc. 5-1, pp. 1, 55.   The court of appeals treated

---

[7] In 2007, the Ohio Supreme Court held that O.R.C. § 2953.82(D), which made the prosecuting attorney's
disagreement with a request for DNA testing conclusive, violated the doctrine of separation of powers and was
therefore unconstitutional.  *State v. Sterling*, 113 Ohio St.3d 255, 261 (2007).  On July 6, 2010, 2010 Am.Sub.S.B.
No. 77, was effective and served to repeal O.R.C. § 2953.82.  *See State v. Lucas*, 2012 WL 2369359, * 2 (Oh. App.
Ct. June 25, 2012).

Montgomery's application as an application to reconsider under App. R. 26(A) and, on April 16, 2007, granted his application and reinstated his original appeal. Doc. 5-1, pp. 1, 54-55.  Counsel was retained to represent Montgomery in his reinstated appeal. Doc. 5-1, p. 54-55.  In his appeal, Montgomery raised three assignments of error, arguing that:

> 1. The trial court erred when it sentenced appellant to a more than minimum prison term, pursuant to R.C. 2929.14(B), based upon findings of fact not presented to a jury or admitted during his plea and sentencing hearing in violation of appellant's state and federal due process and trial by jury rights.
>
> 2. The trial court erred by imposing consecutive prison terms upon appellant, pursuant to R.C. 2929.14(E) and R.C. 2929.14(A), after making judicial findings of fact not presented to a jury or admitted during appellant's plea or sentencing hearing, thus violating appellant's due process and trial by jury rights of the Ohio and United States Constitutions.
>
> 3. Trial counsel was ineffective because counsel allowed him to accept a plea bargain when the attorney should have known that the imposition of the sentence would be repugnant to the Ohio and United States Constitutions due process and right to jury trial provisions.

Doc. 5-1, pp. 1-2.[8]  (internal quotations omitted).  On October 1, 2007, the State filed its brief and, on October 26, 2007, Montgomery filed his reply brief. Doc. 5-1, p. 54.  In February 2008, the Eighth District Court of Appeals affirmed the decision of the trial court.[9]  Doc. 5-1, pp. 1-3. On March 28, 2008, Montgomery, acting *pro se*, filed a notice of appeal with the Supreme Court of Ohio (Doc. 5-1, pp. 54, 57-58, 59-60) and memorandum in support of jurisdiction (Doc. 5-1, pp. 61-110).  In his sole proposition of law, Montgomery argued:

> 1. A guilty plea based upon trial counsel's deliberately withholding exculpatory evidence and not discussing postrelease control in a plea bargain, prosecution's misstatement of the sentence, and sentencing judge's misstatement of the mandatory five year period of postrelease control is void.

---

[8] Assignments of error set forth herein were taken from the Eighth District Court of Appeals' February 7, 2008, decision. *State v. Montgomery*, 2008 WL 322830, * 1-3 (Oh. App. Ct. Feb. 7, 2008); Doc. 5-1, pp. 1-2.

[9] The court of appeals' decision was announced on February 7, 2008 and journalized on the docket on February 19, 2008.  Doc. 5-1, pp. 1, 54, 103.

> Therefore, Appeallant must be remanded to the trial court for a new plea hearing.

Doc. 5-1, pp. 66-67.[10]  On July 9, 2008, the Supreme Court of Ohio denied leave to appeal and dismissed Montgomery's appeal.  Doc. 5-1, pp. 58, 111.

### D.    Petition for Post-Conviction Relief

On November 6, 2006, Montgomery, through counsel, filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21, et seq. (Doc. 5-1, pp. 112-128), asserting two grounds for relief:

> 1.  Petitioner's sentence of "more than the minimum" was enhanced by findings of the sentencing judge, not admitted during Petitioner's Plea or Sentencing Hearing, rendering Petitioner's sentence unconstitutional under the holding of the United States Supreme Court in Blakely v. Washington (2004) 124 S.Ct. 2531.
>
> 2.  Petitioner's Multiple Consecutive Sentencing enhancements were not found by a jury, nor were the facts allowing the enhancements stipulated to during Petitioner's Plea and/or Sentencing Hearing, thus Petitioner's sentence is unconstitutional under the holding of the United States Supreme Court in Blakely v. Washington (2004) 124 S.Ct. 2531.

Doc. 5-1, p. 115.  Also, on November 6, 2006, Montgomery, through counsel, filed a memorandum in support of motion to resentence defendant.  Doc. 5-1, pp. 129-136.  The State filed an opposition to Montgomery's petition for post-conviction relief.  Doc. 5-1, pp. 137-141. On January 8, 2009, the trial court denied Montgomery's petition for post-conviction relief, concluding that the petition was untimely and without merit.  Doc. 5-1, pp. 142-145.

On January 26, 2009, Montgomery, acting *pro se*, filed a motion to vacate void judgment. Doc. 5-1, pp. 146-149.  In his motion, Montgomery requested that the trial court vacate its journal entry denying his petition for post-conviction relief, arguing that it was not signed by the

---

[10] Montgomery argued that his trial counsel "withheld from [him] exculpatory evidence that he was not guilty of the crime of aggravated arson because teh [sic] coroner had unequivocally stated that the murder [sic] was deceased before the fire began."  Doc.  5-1, p. 66.

10

judge and did not bear a clerk of court time stamp.  Doc. 5-1, p. 146.  Montgomery requested that

the court vacate the void judgment and reissue a journal entry with the judge's signature and the

clerk of court's time stamp. Doc. 5-1, p. 146.  On February 3, 2009, the State filed a response.

Doc. 5-1, pp. 150-152.  On February 13, 2009,[11] the trial court denied Montgomery's motion to

vacate void judgment, finding that the docket reflected that, on January 7, 2009, the court issued

findings of fact and conclusions of law in a 4-page signed entry that was journalized on January

8, 2009.  Doc. 5-1, p. 153.

**E.      Motion to Withdraw Guilty Plea and for Hearing on Manifest Injustice**

On July 7, 2011, Montgomery, through counsel, filed a motion to withdraw his 2003

guilty plea pursuant to Ohio Crim. R. 32.1.  Doc. 5-1, pp. 154-172.  On July 18, 2011, a

corrected motion to withdraw guilty plea and for hearing on manifest injustice was filed (Doc. 5-

1, pp. 173-191) along with an appendix (Doc. 5-2, pp. 1-74).  Montgomery argued that his

"decision to plead guilty was based upon failure of the State of Ohio to disclose favorable

evidence to the defense which would have served to bolster the defendant's claims to his lawyers

that his guilty plea was falsely made, and based upon his lawyers failure to investigate the case

and failure to honor his requests to prepare the case for trial based upon his innocence." Doc. 5-

1, pp. 166-167.  On August 18, 2011, the State filed a brief in opposition to motion to withdraw

guilty plea and for hearing on manifest injustice and corrected motion to withdraw guilty plea

and for hearing on manifest injustice.  Doc. 5-2, pp. 75-184.  On August 26, 2011, the State filed

a notice of additional information wherein the State provided additional information regarding an

individual with an extensive record for theft-related crimes, including burglaries at other

---

[11] The trial court's order was signed on February 11, 2009, and time-stamped on February 13, 2009. Doc. 5-1, p. 153.

churches and business, and information regarding prior incidents at St. Stanislaus.  Doc. 5-2, pp.

185-188.  On September 21, 2011, Montgomery filed a reply brief.  Doc. 5-2, pp. 189-240.

Also, on September 21, 2011, Montgomery filed a motion to strike affidavit of

Montgomery's trial counsel, Henry Hilow, Esq. – State's Exhibit 9, included in the State's

opposition to Montgomery's motion to withdraw guilty plea, arguing that the affidavit should be

stricken on the basis that there was a violation of the attorney-client privilege.  Doc. 5-3, pp. 1-8.

On October 4, 2011, the State filed an opposition to the motion to strike affidavit.  Doc. 5-3, pp.

12-18.  On October 14, 2011, Montgomery filed a reply brief.  Doc. 5-3, pp. 9-11.  On

December 29, 2011, the State filed a response to Montgomery's reply.  Doc. 5-3, pp. 19-29.  On

January 9, 2012, Montgomery filed an objection and motion to strike the State's response or in

the alternative for leave to file a reply.  Doc. 5-3, pp. 30-33.

On June 26, 2012, Montgomery filed a motion to stay proceedings pending decision of

the Supreme Court of Ohio in *State v. Billiter*, Case No. 2011-1501, stating that the *Billiter* case

involved the issue of whether *res judicata* prohibited a motion to withdraw guilty plea based on a

claim of actual innocence.  Doc. 5-3, pp. 34-36.  On July 10, 2012, the State opposed

Montgomery's motion to stay proceedings.  Doc. 5-3, pp. 37-41.

On December 28, 2012, the trial court denied Montgomery's motion to withdraw his

guilty plea, finding it barred by *res judicata*.  Doc. 5-3, pp. 42-49.  Also, on December 28, 2012,

the trial court issued rulings on other pending motions, which included denial of Montgomery's

motion to strike affidavit.  Doc. 5-1, p. 23.

**F.**     **Appeal from Denial of Motion to Withdraw Guilty Plea**

On January 24, 2013, Montgomery, through counsel, filed a notice of appeal with the

Eighth District Court of Appeals from the trial court's December 28, 2012, Judgment Entry and

Order and Decision denying his motion to withdraw guilty plea.  Doc. 5-3, pp. 50-59.   On

March 28, 2013, Montgomery filed his appellate brief, asserting the following assignments of

error:

1. The trial court abused judicial discretion when it denied the Motion to Strike Affidavit of Henry Hilow, Esq. U.S. Const., Amends. V, VI, XIV; Ohio Const. Art. I, §§ 1, 2, 5, 10, 16.; R.C. 2317.02.

2. The trial court erred in its application of the doctrine of res judicata to Appellant's Motion to Withdraw Guilty Plea thus violating his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1 § 1, 2, 5, 10, and 16 of the Ohio Constitution.

3. The trial court erred and abused judicial discretion when it denied Appellant's Motion to Withdraw Guilty Plea without an evidentiary hearing thus violating his right under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1 § 1, 2, 5, 10, and 16 of the Ohio Constitution.

Doc. 5-3, pp. 63, 79-89.

On May 17, 2013, the State filed its appellate brief.  Doc. 5-3, pp. 97-125.  On June 18,

2013, Montgomery filed a reply brief.  Doc. 5-3, pp. 126-139.  On August 26, 2013,

Montgomery filed notice of additional authorities.  Doc. 5-3, pp. 140-149.

On September 26, 2013, the Eighth District Court of Appeals affirmed the trial court's

judgment.  Doc. 5-1, pp. 4-16; Doc. 5-3, pp. 150-186.

On November 12, 2013, Montgomery, through counsel, filed a notice of appeal with the

Supreme Court of Ohio.  Doc. 5-3, pp. 187-188, 189-190.  In his Memorandum in Support of

Jurisdiction (Doc. 5-3, pp. 191-246), Montgomery raised the following two propositions of law:

1. Judicial supervision is required before an attorney may disclose client communications pursuant to the "self-protection" exception of the attorney-client privilege.  R.C. 2317.02(A); *Squire, Sanders & Dempsey, LLP v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533; *State v. Howard*, 2nd Dist. Montgomery no. 8001, 1984 LEXIS 8892 (Jan. 4, 1984).

    2.   The doctrine of res judicata does not bar a post-sentencing motion to withdraw guilty plea based upon exculpatory information unavailable to the defendant at the time of a previously filed petition for post-conviction.  Crim. R. 32.1; R.C. 2953.21; *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).  U.S. Const. amend V, VI and XIV.

Doc. 5-3, pp. 192, 202-207.  On December 12, 2013, the State filed a Memorandum in Response.

Doc. 5-3, pp. 247-261.  On February 19, 2014, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal.  Doc. 5-3, pp. 187-188, 262.

## G.    Federal Habeas Corpus

On February 19, 2015, Montgomery, through counsel, filed his habeas Petition asserting

two grounds for relief.  Doc. 1.  Respondent filed a Return of Writ.  Doc. 4.  Thereafter,

Montgomery filed a Traverse.  Doc. 11.  Montgomery's grounds for relief are discussed more

fully below.

## III.    Law and Analysis

## A.    Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      Grounds for Relief**

> **Ground One:**   Petitioner was deprived of his right to the effective assistance of counsel when counsel failed to fully investigate his case and failed to relay exculpatory evidence to Petitioner prior to entering a guilty plea.

> **Supporting Facts:** Trial counsel, Henry Hilow and William McGinty, failed to investigate a false confession based on Petitioner's mental illness and coercive police interrogation, failed to prepare for trial and failed to investigate exculpatory evidence demonstrating Petitioner's innocence.  Further, trial counsel failed to disclose to Petitioner that cell phone records were disclosed that tended to prove his innocence.

Doc. 1, p. 5.

> **Ground Two:**  Petitioner was deprived of his due process rights when the State failed to disclose materially exculpatory evidence.

> **Supporting Facts:** The State failed to disclose that the cell phone records belonged to the victim, that the cell phone was used shortly after the victim's death, that the cell phone was discovered in an abandoned lot 2 miles away, that the cell phone was found in the possession of two convicted felons and the person in possession of the cell phone when confiscated by the police gave false identification and was visibly shaken when questioned.  The State further failed to disclose that a lockbox was found at the scene of the crime unlocked, opened and empty and there were missing cash funds.

Doc. 1, p. 7.

**1.  AEDPA Statute of Limitations**

Respondent argues that Montgomery's Petition should be dismissed because it is time

barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) and (d)(1)(D) of the

Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  Doc. 4, pp. 17-22.

Montgomery contends states that his habeas action should not be barred by the one-year statute

of limitations contained in 28 U.S.C. § 2244(d) because: (1) an application for DNA testing is

pending in common pleas court; (2) his Petition is brought within the time frame the factual

predicate was discovered, which he asserts occurred on January 29, 2011; and (3) he is actually

innocent and therefore entitled to equitable tolling.  Doc. 1, pp. 13-14; Doc. 11, pp. 3-6.

AEDPA provides, in relevant part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28  U.S.C. § 2244(d).

**2.   Application of AEDPA's statute of limitations to Montgomery's Petition**

**a.        Starting the 1-year statute**

As indicated above, under 28 U.S.C. § 2244(d)(1), the statute of limitations starts to run

from the later of four dates, two of which are pertinent to the arguments raised by the parties.

*See* 28 U.S.C. § 2244(d)(1)(A)-(D).  Respondent contends that the statute of limitations should

be calculated under 28 U.S.C. § 2244(d)(1)(A), i.e., based on the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such

17

review.   Doc. 4, pp. 17-20.  Montgomery contends that the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence was January 29, 2011, and therefore under 28 U.S.C. § 2244(d)(1)(D), the statute of limitations should not begin to run until that date.  Doc. 1, p. 13; Doc. 11, pp. 3-4.  Montgomery also claims that his Petition is timely because his application for DNA testing has not been ruled upon by the trial court.  Doc. 1, p. 13.

### Starting the 1-year statute under *28 U.S.C. § 2244(d)(1)(A)*

In October 9, 2003, Montgomery pleaded guilty and was sentenced.  Doc. 5-1, p. 28.  His journal entry of conviction and sentencing was journalized on October 10, 2003.  Doc. 5-1, p. 28. Montgomery had thirty days to file a direct appeal with the Eighth District Court of Appeals. *See* Ohio App. R. 4(A).    The thirty days expired on November 9, 2003, which was a Sunday so Montgomery had until November 10, 2003, to file his appeal.  *See* Ohio App. R. 14(A). Montgomery did not file a direct appeal.  Thus, his conviction became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on the expiration of the time for filing his direct appeal, i.e., November 10, 2003, and the statute of limitations began running the following day, i.e., November 11, 2003.  Absent tolling, Montgomery had one year from that date or, until November 10, 2004, to file his federal habeas petition.  *See* 28 U.S.C. § 2244(d)(1)(A).  Montgomery filed his Petition with this Court on February 19, 2015 (Doc. 1), over 10 years after the statute of limitations expired under 28 U.S.C. § 2244(d)(1)(A).

### Starting the 1-year statute under *28 U.S.C. § 2244(d)(1)(D)*

Montgomery claims that he should be entitled to a later start date for the running of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(D) and that his Petition is timely because he did not discover the factual predicate for his claims until January 29, 2011, "when

Petitioner learned from Barry Wilford that his counsel, Henry Hilow and William McGinty, had not fully investigated his case and had failed to disclose exculpatory evidence to him prior to advising him to enter a guilty plea and that the state had not disclosed the value of the evidence." Doc. 1, p. 13.  Petitioner relies on his February 18, 2015, Declaration, describing information he learned about his case in March 2010 and on January 29, 2011, from an investigative reporter and/or from his attorney Barry Wilford. Doc. 11, pp. 3-4.  Respondent contends that Montgomery is not entitled to a later start date because the factual predicates for his claims were all known at the time of his plea and sentencing.  Doc. 4, pp. 18-20.  Assuming *arguendo* that January 29, 2011, is the date that Montgomery, through the exercise of due diligence, discovered the factual predicates for his claims, the statute of limitations started to run the following day and expired one year later on January 30, 2012.   Montgomery filed his Petition with this Court on February 19, 2015 (Doc. 1), over 3 years after the statute of limitations expired under 28 U.S.C. § 2244(d)(1)(D).

Based on the foregoing, under either 28 U.S.C. § 2244(d)(1)(A) or 28 U.S.C. § 2244(d)(1)(D), absent tolling of the statute of limitations, Montgomery's Petition is time-barred.

### b.  Statutory tolling under 28 U.S.C. § 2244(d)(2)

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).  "'[C]ollateral review' of a judgment or claims means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 553, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011).  "[A]n application is pending so long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002).  "In other words, until the

application has achieved a final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"  *Id.* at 220.  This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

### Application of statutory tolling if the statute starts to run under *28 U.S.C. § 2244(d)(1)(A)*

On December 10, 2003, Montgomery filed a motion for leave to file a delayed appeal.  If the statute of limitations started to run on November 11, 2003, under 28 U.S.C. § 2244(a)(1)(A), 29 days of the one-year statute of limitations had elapsed prior to Montgomery filing the motion for leave to file a delayed appeal.  On January 8, 2004, the court of appeals granted Montgomery's motion for leave to file delayed appeal and appointed counsel for the delayed appeal. Doc. 5-1, p. 55.  On May 18, 2004, Montgomery's counsel filed a motion for voluntary dismissal of the appeal.  Doc. 5-1, pp. 1, 55.  The court of appeals granted to the motion for voluntary dismissal and dismissed the appeal on May 19, 2004.  Doc. 5-1, pp. 1, 55.  Since Montgomery's motion for leave to appeal was filed prior to the expiration of the statute of limitations, it served to toll the statute of limitations while it remained pending.  *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006) (if properly filed, a motion for delayed appeal does not restart the statute of limitations but tolls the statute during the period it is pending).  Since the appeal concluded and was no longer pending as of May 19, 2004, the statute of limitations clock resumed running, with 336 days of the one-year statute of limitations remaining.[12]

---

[12]  365 days – 29 days (November 11, 2003 – December 10, 2003) = 336 days.

One-hundred and fifty-five days later, on October 21, 2004, Montgomery filed an application for DNA testing.  Doc. 5-1, p. 25; *Montgomery*, 997 N.E.2d at 584, ¶ 10 (Oh. App. Ct. 2013).  In his Petition, Montgomery claims that, since his DNA application has not been ruled upon by the trial court, the statute of limitations has not run and his federal habeas petition was timely filed.  Doc. 1, p. 13.  Montgomery raises this issue in a conclusory manner in his Petition but does not address, either in his Petition or Traverse, how his application for DNA testing serves to toll the statute of limitations.

It does not appear that the Sixth Circuit has addressed the issue of whether an application for DNA testing in Ohio serves to toll the AEDPA statute of limitations.  However, courts outside the Sixth Circuit have addressed the issue and reached different results.

A number of courts have concluded that an application for DNA testing does not toll the AEDPA statute of limitations. For example, in *Woodward v. Cline*, 693 F.3d 1289, 1292-1294 (10th Cir. 2012), the Tenth Circuit concluded that the petitioner's motion for DNA testing was akin to a request for discovery, not a request for reexamination of his judgment.  693 F.3d at 1293.  In reaching its conclusion, the Tenth Circuit relied on the Supreme Court's statements in *Kholi* that motions for post-conviction discovery are not generally direct requests for judicial review of a judgment and do not provide a state court with authority to provide relief from a judgment.  *Id.* at 1294 (citing *Kholi*, 131 S.Ct. at 1286, n. 4).  *See also, Price v. Pierce*, 617 F.3d 947, 951-954 (7th Cir. 2010) (motion requesting DNA testing under Illinois law not collateral review and therefore did not toll statute of limitations for federal habeas petition); *Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335, 1337-1338 (11th Cir. 2008) (DNA testing motion under Florida rules involved discovery only and was not an "application for post-conviction or other collateral review" for purposes of tolling AEDPA statute of limitations).

In contrast, the Fifth Circuit reached the conclusion that a motion for DNA testing in Texas did serve to toll the AEDPA statute of limitations.  *See Hutson v. Quarterman*, 508 F.3d 236 (5th Cir. 2007).  The *Hutson* court reasoned that "the motion for post-conviction DNA proceedings is seeking to challenge that judgment by potentially requiring that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have been acquitted given the DNA."  *Id.* at 239.  Thus, the court held that the petitioner's "motion for DNA testing [was] a request for 'review' of the judgment pursuant to which he [was] incarcerated."  *Id.* at 239.

In Montgomery's application for DNA testing, he was requesting discovery, i.e., DNA testing of the bullet removed from the victim's body.[13]  *Montgomery*, 997 N.E.2d at 584, ¶ 10.  He argued that "his DNA would not be on the bullet, so 'it would be impossible for [him] to have used a firearm to shoot the victim'" and "if he did not shoot the victim, '[he] would not have set the fire, making [him] innocent of aggravated arson.'"[14]  *Id.*  Had his application been granted, he could have proceeded with a petition for post-conviction relief based on the results after the testing was completed.  *See* O.R.C. § 2953.21(A)(1)(a) (2003).  Thus, since his application for DNA testing amounted to a request for discovery, not an actual petition for post-conviction relief or for collateral review of his judgment, the undersigned finds the reasoning of the Seventh, Tenth, and Eleventh Circuits persuasive and concludes that Montgomery's application for DNA did not serve to toll the AEDPA statute of limitations.  Further, even if Montgomery's DNA application did toll the AEDPA statute of limitations under 28 U.S.C. § 2244(d)(2), as explained

---

[13] Montgomery's application for DNA was not filed with this Court.  The Eighth District Court of Appeals, in discussing the procedural history of Montgomery's case, discussed the contents of his application for DNA testing. *Montgomery*, 997 N.E.2d at 584, ¶ 10.

[14]  Montgomery told the police that the gun he purchased was loaded.  Doc. 5-2, p. 108.  As discussed herein, Montgomery contends his confession was false.

below, the application, although not ruled on by the trial court, was not "pending" under 28 U.S.C. § 2244(d)(2) when Montgomery's Petition was filed.

Montgomery's application for DNA was filed under former O.R.C. § 2953.82(D), which stated at that time that "the prosecuting attorney's disagreement is final and is not appealable by any person to any court, and no court shall have authority, without agreement of the prosecuting attorney, to order DNA testing . . ." O.R.C. § 2953.83(D) (2003), *held unconstitutional by*, *State v. Sterling*, 113 Ohio St.3d 255, 261 (2007) and *repealed by*, 2010 Am.Sub.S.B. No. 77 (On July 6, 2010); *see also Montgomery*, 997 N.E.2d at 584, ¶ 10.   Thus, under former O.R.C. § 2953.82(D), on December 3, 2004, when the prosecuting attorney filed his statement of disagreement in response to Montgomery's application for DNA testing (Doc. 5-1, p. 25; *Montgomery*, 997 N.E.2d at 584, ¶ 10) the matter was final and not appealable.[15]  Accordingly, as of December 3, 2004, final resolution of the application was achieved and therefore the application was no longer pending.  *See e.g., Saffold*, 536 U.S. at 220 (application is pending until final resolution is achieved).  Thus, even if Montgomery's application for DNA testing served to toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2),  it  only tolled the statute of limitations for 43 days — from October 21, 2004, the date Montgomery filed the application, until December 3, 2004, the date the State responded by filing the prosecuting attorney's statement of disagreement to application for DNA testing.

If Montgomery's application for DNA testing did serve to toll the statute of limitations for the 43 day period, as of December 3, 2004, the statute of limitations clock resumed with 181

---

[15] Following the repeal of former O.R.C. § 2953.82, Montgomery did not file a new application for DNA testing. Even if he had, under the current version of Ohio's DNA testing statutes, an offender, like Montgomery, who pleaded guilty, is not an eligible offender.  *See Lucas*, 2012 WL 2369359, * 2 (discussing O.R.C. § 2953.72).  Thus, "since an inherent prerequisite to obtaining DNA testing pursuant to R.C. 2953.71 et seq. is that the applicant [is] an eligible offender[,]" Montgomery would not meet the prerequisites to filing a request for DNA testing. *Id.*

days remaining left on the one-year statute of limitations.[16] With 181 days remaining, absent any further statutory tolling, the AEDPA statute of limitations expired June 2, 2005.  Montgomery filed a motion for jail time credit and petition for post-conviction relief on November 6, 2006.[17] Doc. 5-1, p. 25.  Those filings would not serve to further toll the statute of limitations because they were filed after June 2, 2005.   *See Vroman,* 346 F.3d at 602 ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") (internal quotations and citation omitted).  Since Montgomery's Petition was filed well after June 2, 2005, his Petition is barred by the statute of limitations under 28 U.S.C. § 2244(d)(1)(A) unless he can demonstrate a basis for equitable tolling.

### Application of statutory tolling if the statute starts to run under *28 U.S.C. § 2244(d)(1)(D)*

Assuming *arguendo* that Montgomery is entitled to a later start date of January 29, 2011, under 28 U.S.C. § 2244(d)(1)(D), because that is the date that he, through the exercise of due diligence, could have discovered the factual predicates for his claims, statutory tolling does not bring his Petition within the one-year statute of limitations for the reasons discussed below.

If the factual predicate date is January 29, 2011, the statute of limitations began to run the next day, i.e., January 30, 2011, and continued to run for 158 days until July 7, 2011, when Montgomery filed his motion to withdraw his guilty plea. Doc. 5-1, pp. 154-172. Montgomery's motion to withdraw his guilty plea remained pending until February 19, 2014, when the Supreme Court of Ohio declined jurisdiction over Montgomery's appeal pertaining to the lower court's denial of his motion to withdraw guilty plea.  Doc. 5-3, pp. 187-188, 262.

---

[16] 365 days – 29 days (November 11, 2003 – December 10, 2003) – 155 days (May 19, 2004 – October 21, 2004) = 181 days.

[17] On November 6, 2006, Montgomery also filed an application to reopen his appeal pursuant to Ohio App. R. 14(B) and 26(B). Doc. 5-1, p. 55.

Thus, the statute of limitations resumed on February 19, 2014,[18] with 207 days remaining.[19]

With 207 days remaining, the AEDPA statute of limitations expired on September 14, 2014.

Since September 14, 2015, was a Sunday, Montgomery had until September 15, 2014, to file his

Petition. *See* Fed. R. Civ. P. 6(a)(1)(C).  Montgomery did not file his Petition until February 19,

2015, over 5 months after the expiration of the statute of limitations.  Thus, his Petition is barred

by the statute of limitations under 28 U.S.C. § 2244(d)(1)(D) unless he can demonstrate a basis

for equitable tolling.

### c.  Equitable Tolling

AEDPA's statute of limitations is subject to equitable tolling.  *Hall v. Warden, Lebanon*

*Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, ___ U.S.___, 130 S.Ct.

2549, 2560, 177 L.Ed.2d 130 (2010)).  Equitable tolling allows courts to review time-barred

habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline

unavoidably arose from circumstances beyond that litigant's control.'"  *Robinson v. Easterling*,

424 Fed. Appx.  439, 442 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d

297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  "[C]ourts grant

equitable tolling 'sparingly.'"  *Hall*, 662 F.3d at 749 (citing *Robertson*, 624 F.3d at 784).  There

are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence*

equitable tolling.

A habeas petitioner is entitled to traditional equitable tolling only if he establishes "(1)

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

---

[18] Montgomery did not seek certiorari in the United States Supreme Court.  Even if he had, the filing of a petition for certiorari would not toll the statute of limitations under 28 U.S.C. § 2244(d)(2).  *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (time associated with filing a petition for certiorari in the United States Supreme Court with respect to a state post-conviction petition does not toll the statute of limitations under 28 U.S.C. § 2244(d)(2)).

[19] 365 days – 158 days (January 30, 2011 – July 7, 2011) = 207 days.

stood in his way and prevented timely filing."[20] *Holland*, 130 S.Ct. at 2562 (internal quotations omitted). Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner bearing the "ultimate burden of persuading the court that he . . . is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012). "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court has underscored the fact that "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329) (emphasis supplied).

Montgomery does not argue for equitable tolling under the traditional two-part test. His argument is premised upon a claim of actual innocence. Montgomery confessed to the crimes he ultimately pleaded guilty to. Nevertheless, he argues that he can demonstrate that he is actually

---

[20] *Holland's* two-part test replaced the previously five-factor inquiry used by the Sixth Circuit for determining whether a habeas petitioner was entitled to equitable tolling. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. Appx. 439, 442 n. 1 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011)).

innocent of the crimes he pleaded guilty to because "new evidence" disproves his confession. He

contends that:

> The new evidence provided by Mr. Montgomery demonstrates that, after a lengthy and ethically questionable interrogation, Mr. Montgomery gave a confession, which has been completely disproven.  He told the police he purchased a gun at a specific store from an African American clerk.  But when the police went to the store, the owner checked the video tapes and Mr. Montgomery never appeared on camera, nor did the store owner employ any African Americans.
>
> Furthermore, Mr. Montgomery was never made aware of the cell phone records that would have established his actual innocence.  These cell phone records, while known to the police, were not identified as cell phone records of the victim, showed that the cell phone was used shortly after the victim's death, that the cell phone was discovered in an abandoned lot 2 miles away from the scene of the crime and that the phone was found in the possession of two convicted felons and the person in possession of the phone, when confronted by the police, gave false identification and was visibly shaken when questions.  Finally, Mr. Montgomery was unaware that a lockbox was found at the scene of the crime, unlocked, opened and empty and there were missing cash funds.

Doc. 11, p. 6.

During proceedings relating to Montgomery's motion to withdraw guilty plea,

Montgomery's trial counsel submitted an affidavit attesting to the fact that evidence that

Montgomery claims is "new evidence" was discussed with Montgomery prior Montgomery's

plea, including that the cell phone records provided by the prosecutor were cell phone records of

the victim,[21] that the owner of the store from which Montgomery claimed he purchased the gun

denied having an employee matching the description provided by Montgomery, and that burnt

money was found outside a strongbox at the fire scene.  *Montgomery*, 997 N.E.2d at 586, ¶ 20;

Doc. 5-1, p. 7.   This affidavit casts doubt on Montgomery's claim that the evidence is in fact

"new evidence" sufficient to establish an entitlement to equitable tolling.  Montgomery claims

---

[21] The State Court of Appeals concluded that cell phone records belonging to the victim were provided to trial counsel in September 2003 as part of supplemental discovery, prior to Montgomery's guilty plea.  *Montgomery*, 997 N.E.2d at 592-593, ¶¶ 45-50; Doc. 5-1, pp. 11-12.

that this affidavit should not be considered because it violates the attorney-client privilege and the Ohio Rules of Professional Responsibility.  Doc. 11, p. 4, n. 1.  However, the State Court of Appeals considered Montgomery's claim that his trial counsel's affidavit should have been stricken but found it to be without merit.  *Montgomery*, 997 N.E.2d at 585-592, ¶¶ 18-40; Doc. 5-1, pp. 6-11.

Even assuming that Montgomery could demonstrate that the evidence upon which he relies is "new evidence," his argument fails to establish an entitlement to equitable tolling.  To establish actual innocence, Montgomery must demonstrate that, "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. 298, 327-328).  The Supreme Court has stated that "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.*  Further, as stated by the Supreme Court, "tenable actual-innocence gateway pleas are rare[.]"  *Perkins*, 133 S.Ct. at 1928.

Montgomery's claim as presented in this federal habeas case does not fall within the rare category of cases that justify tolling based on a claim of actual innocence.  His argument is a legal sufficiency argument.  He claims that his confession is "completely disproven" by the alleged "new evidence."  Doc. 11, p. 6.  His argument is focused on only one portion of his confession, i.e., his statement as to where he purchased his gun.  Doc. 11, p. 6.  Further, he has failed to articulate or demonstrate how disproving a confession given by him proves he is actually innocent of the crimes he confessed to committing and pleaded guilty to or that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Perkins*, 133 S.Ct. at 1933.   When it found no manifest injustice to warrant reversal of the trial court's denial of his motion to withdraw guilty plea, the state court of appeals

stated that, while Montgomery claimed that he made up his confession, told his trial attorney he did so, and claimed his innocence to his trial attorney, Montgomery, a highly educated person, nevertheless pleaded guilty consistent with his confession 10 months after his confession. *Montgomery*, 997 N.E.2d at 596-597, ¶¶ 67-70; Doc. 5-1, p. 15.  While Montgomery claims that he did not know certain information and that he would not have pleaded guilty if he had known that information, he still has not identified "new evidence" to support a claim of factual innocence.

For the reasons set forth above, the undersigned concludes that Montgomery's Petition was not timely filed and he is not entitled to equitable tolling of the statute of limitations. Accordingly, the undersigned recommends that the Court dismiss Montgomery's Petition with prejudice as barred by the statute of limitations.

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS with prejudice** Montgomery's Petition (Doc. 1).

Dated: October 26, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).